NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DONG B. LIN,

          Petitioner,

v.

THE ATTORNEY GENERAL OF THE
STATE OF NEW JERSEY, et al.,

          Respondents.

Civil Action No. 22-3497 (MAS)

OPINION

**SHIPP, District Judge**

This matter comes before the Court on the amended petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 filed by Petitioner Dong B. Lin. (ECF No. 16.) Following an order to answer, Respondents filed a response to the Petition (ECF No. 19), to which Petitioner replied. (ECF No. 23.) For the following reasons, the amended petition shall be denied and Petitioner shall be denied a certificate of appealability.

**I.    BACKGROUND**

In its opinion affirming the denial of Petitioner's petition for post-conviction relief, the Superior Court of New Jersey, Appellate Division, summarized the factual background of Petitioner's convictions as follows:

> On June 16, 2010, [Petitioner] and his co-defendant, Zeng Liang Chen, broke into the home of a former employer in Freehold. The men were armed with a knife and brass knuckles and intended to commit theft. Upon entering the home, they tied up the male victim with telephone wire. [Petitioner] proceeded to search the home for valuables and subsequently found a female victim upstairs in bed. [Petitioner] then stabbed the female victim repeatedly through her

bedding; upon hearing a male victim yelling downstairs, [Petitioner] returned and stabbed him until his knife broke. [Petitioner] then found another knife in the home and used it to continue the attack. Both victims died from multiple stab wounds. Approximately one hour later, the police arrested [Petitioner] and his co-defendant walking nearby.

On October 18, 2010, a Monmouth County grand jury returned an indictment, charging [Petitioner] and his co-defendant with the following offenses: conspiracy to commit armed burglary[,] two counts of [first degree] murder[,] two counts of felony murder[,] armed burglary[,] armed robbery[,] and possession of a knife for an unlawful purpose. . . In addition, the grand jury returned a notice of aggravating factors against [Petitioner], thus exposing him to life sentences without parole for both murders.

In January 2013, [Petitioner] moved to suppress his statement made to the police. The trial court denied [Petitioner]'s motion in May 2013, following a *Miranda* [*v. Arizona*, 384 U.S. 436 (1966),] hearing. In January 2014, [Petitioner] pled guilty to [two counts of felony murder and two counts of armed robbery] in exchange for the State's agreement to dismiss the remaining counts and to recommend a life sentence for [the felony murder counts] subject to the No Early Release Act (NERA), [N.J. Stat. Ann. §] 2C:43-7.2[.] At the outset of [Petitioner]'s plea hearing, the prosecutor placed the material terms of the plea agreement on the record, including [Petitioner]'s sentencing exposure under the agreement [which included a life sentence with a 63.75 year[1] period of parole ineligibility for the murder counts]. . . .

After the prosecutor finished placing the plea agreement on the record, [Petitioner]'s counsel addressed the court[, confirming Petitioner had spoken with her using an interpreter and understood the terms of the agreement and was knowingly and voluntarily entering his guilty plea.] [Petitioner]'s counsel further noted "that the defense reserves the right to argue for less than the sentence that the prosecutor is recommending."

By way of factual basis, [Petitioner] recounted that he and his codefendant broke into the victim's home to commit theft, and they tied up the male victim with telephone wire. [Petitioner] testified he

---

[1] As the Appellate Division noted, during the plea hearing, both the prosecutor and judge referred to this period as a 67.5 year period of ineligibility, which was a slight overstatement of the proper NERA period of ineligibility for a life sentence, but this issue was not mentioned or used in sentencing and the period was correctly noted in Petitioner's judgment of conviction. (*See* ECF No. 31 at 6 n.4.)

searched the home for valuables, found the victim[] upstairs in bed and stabbed her through the bedding; when the male victim began screaming and yelling after hearing the cries of the female victim, [Petitioner] stabbed him as well. [Petitioner] stated he stabbed the male victim until his knife broke. He then found another knife in the house and continued the assault.

Both [Petitioner] and his counsel agreed that they reviewed the plea form together, with the aid of an interpreter. Moreover, [Petitioner] testified that he understood the questions on the form and answered them truthfully. [Petitioner] also confirmed that he was pleading guilty "freely and voluntarily."

Relevant to [Petitioner]'s PCR claim[s], the plea judge and defendant engaged in [a] colloquy [in which Petitioner confirmed he understood he was facing a life sentence with the applicable NERA period of parole ineligibility, that no other promises had been made to Petitioner, and that the judge would determine his sentence after considering the relevant arguments and facts.]

[Petitioner] subsequently testified at the trial of his co-defendant, who was convicted as charged. At [Petitioner]'s sentencing hearing in May 2015, defense counsel urged the court to find mitigating factors [including that Petitioner] had no prior criminal record, that he took rehabilitative measures in jail, and was remorseful and cooperated with the State by pleading guilty and testifying against his co-defendant.

Despite the defense's arguments in mitigation, the court found aggravating factors preponderated and imposed the sentence the parties negotiated: life imprisonment with an eighty-five percent parole bar [on the murder charges] and a concurrent thirty-year term with no parole on [the robbery charges]. The court provided a detailed description of the murders, noting their brutality, the victim's injuries, and the evidence of pain and anguish the victims experienced during their slayings.

[Petitioner] appealed, arguing that his statement to police should have been suppressed and that his sentence was excessive. [The Appellate Division] rejected both arguments and affirmed. . . On October 24, 2018, [the New Jersey] Supreme Court denied certification. *State v. Lin*, 235 N.J. 456 (2018).

(ECF No. 19-31 at 2-8.)

## II.     **LEGAL STANDARD**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the]

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. DISCUSSION

In his first two claims, Petitioner asserts that his *Miranda* rights were violated. According to Petitioner, the officer translating the *Miranda* warnings did so in allegedly improper fashion. In addition, the following morning, the officer read the charges to Petitioner after Petitioner requested a lawyer. Petitioner alleges that this improperly resulted in his admitting to the crimes because Petitioner believed it was an accusation rather than a mere reading of the charges. As to the translation issue, Petitioner specifically takes issue with the translating officer telling him he could hire an attorney if he wanted and later telling Petitioner that if he could not afford one, the state could provide one for him. The translating officer, however, did not explicitly state that this would occur prior to questioning, although officers thereafter told Petitioner that they could not talk to him until he decides whether he would like an attorney. (*See* ECF No. 16 at 6-7; ECF No. 20 at 4-5.) The Appellate Division rejected these arguments, explaining as follows:

> Here, the police first read [Petitioner] the *Miranda* warnings on June 16, 2010. Although [Petitioner] raises issues about the translation and thus, the content of the warnings, when Lin appeared to ask for an attorney, the officers properly terminated the interview as they were required to do under *Miranda*. [Petitioner] was not questioned further that night.
>
> [Petitioner] challenges the translation of the *Miranda* warnings on June 16. Although the *Miranda* card was read to [Petitioner in English], when [an officer] translated the warnings he said that Lin had the ability to "hire" an attorney, leaving out that if he could not afford one, an attorney could be appointed for him. [The officer] later translated that if [Petitioner] wants an attorney and cannot afford it, "we can provide one for you," but omitted the portion about "prior to questioning." When [the other officer] informed Lin that he could not speak with him until he decided if he wanted an attorney, [the translating officer] translated "We can't talk to you until you decide if you want an attorney or not" but then on his own added "[b]ut talking now will help you."

5

. . . Although [the translating officer's] translation [of the *Miranda* warnings] was not an exact rendering of [the *Miranda* card], [Petitioner] nevertheless invoked his right to remain silent and to ask for an attorney. We agree with the trial court that [Petitioner] understood the difference between speaking and not as reflected by the invocation of his rights.

On the next day, June 17, [the translating officer] informed [Petitioner] in Mandarin Chinese of the charges against him, including two charges of . . . murder and two charges of . . . felony murder. This was not videotaped. We agree with the trial court that reading the charges to Lin did not constitute a custodial interrogation because it was not designed to elicit an incriminating response. Inquiries incidental to the custodial relationship . . . do not initiate further conversation concerning [an] interrogation.

[The translating officer] testified, however, that when the charges were read to [Petitioner], he asked to speak with them about the incidents from the day before. When [Petitioner] reiterated this and that he no longer wanted a lawyer, [Petitioner] was placed in an interrogation room so that his statement could be recorded.

. . . .

The trial court found the officer's testimony credible that [Petitioner] asked to speak with them without his attorney. We defer to the trial court's factual findings [where, as here, they are not clearly mistaken]. [The translating officer's] testimony supported the finding that [Petitioner] initiated communication with the officers about the murders, indicating a desire to speak with them without his attorney.

[The officers] re-administered the *Miranda* warnings [and translated them.] [Petitioner] alleges the officers elicited a confession from him by the accusatory manner in which the charges were reviewed and also based on the translation errors from the day before.

. . . .

We . . . do not agree that [the officer's] interpretation on June 16 tainted [Petitioner]'s knowing and intelligent waiver of rights on June 17. [Petitioner] plainly understood that he could remain silent and ask for counsel because he invoked those rights on June 16. We agree with the trial court that in looking at the totality of the circumstances, [Petitioner] was properly advised of his *Miranda*

>rights and waived those rights on June 17 voluntarily, intelligently, and knowingly before confessing to the police.

(ECF No. 19-20 at 14-18, internal citations and quotations omitted.)

Although *Miranda* requires that criminal defendants subject to custodial interrogation be provided certain warnings to render their statements given during interrogations admissible at trial, the Supreme Court has never required a specific talismanic formulation of the four proscribed warnings by interrogating officers. *See Florida v. Powell*, 559 U.S. 50, 59-61 (2010). All that *Miranda* requires is that a suspect exposed to custodial interrogation be warned prior to questioning that he has the right to remain silent, that anything he says can be used against him, that he has the right to an attorney, and that an attorney will be appointed prior to questioning if he desires one. *Id.* at 59-60. As the Supreme Court explained in *Powell*,

>The four warnings *Miranda* requires are invariable, but this Court has not dictated the words in which the essential information must be conveyed. *See California v. Prysock*, 453 U.S. 355, 359 [(1981)] (per curiam) ("This Court has never indicated that the rigidity of *Miranda* extends to the precise formulation of the warnings given a criminal defendant." (internal quotation marks omitted)); *Rhode Island v. Innis*, 446 U.S. 291, 297 [(1980)] (safeguards against self-incrimination include "*Miranda* warnings . . . or their equivalent"). In determining whether police officers adequately conveyed the four warnings, we have said, reviewing courts are not required to examine the words employed "as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Duckworth* [*v. Eagan*,] 492 U.S. [195,] 203 [(1989)].

559 U.S. at 59-60. Thus, so long as the warnings given reasonably conveyed the meaning of the four required warnings, they will comply with the requirements of *Miranda* even if they deviate from the most common rendition of the warnings.

The Appellate Division's determination regarding Petitioner's claim that the *Miranda* warnings he was given were so inaccurate as to render them ineffective was neither contrary to nor an unreasonable application of federal law. Although the translating officer's rendition of the

7

*Miranda* warnings may not have been a perfect translation of the *Miranda* card, the testimony of the officers and surrounding record indicate that Petitioner was given all four of the required warnings. The translating officer did somewhat splice the information regarding an attorney. Nevertheless, prior to Petitioner making a determination of whether or not to speak with police, it was clear that the officers told him that: (1) he could hire an attorney; (2) if he could not afford one, he could have an attorney appointed; and (3) they would not continue with the interrogation until Petitioner decided whether or not he wanted or needed an appointed attorney. When Petitioner stated that he wanted an attorney, the officers immediately ceased the interrogation. Considering these facts, it is clear that the officers' warnings made Petitioner aware of his rights and the officers respected Petitioner's invocation of those rights. Here, the warnings given to Petitioner in their totality meet the requirements of *Miranda* and its progeny.

Petitioner's claims regarding the reinitiation of contact fare no better. *Miranda's* protections apply only to defendants subjected to custodial interrogation or situations that are the functional equivalent of questioning. The protections do not apply where officers speak with or around a criminal defendant where the officers would not have had reason to know that their actions would elicit an incriminating response. *See, e.g., Rhode Island v. Innis*, 446 U.S. 291, 299-304 (1980). The reading of the charges against Petitioner was not the functional equivalent of interrogation but rather a relatively standard element of criminal detention. The record is devoid of any information which would suggest that the officers should have known that providing Petitioner with the charges being filed against him would have led to Petitioner wanting to make an incriminating statement. Instead, it was Petitioner's own decision to reinitiate a conversation with the police and to ultimately waive his *Miranda* rights. Considering the record with appropriate deference, it was not an unreasonable determination of fact for the state courts to conclude, in light of the warnings Petitioner was given, that he chose to reinitiate contact with the

8

police, and thereafter knowingly and voluntarily waived his rights and chose to speak with the officers. *See, e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (waiver of *Miranda* rights is proper so long as it is voluntary in the sense that it was the product of a free and deliberate choice absent coercion and knowing and intelligent in the sense that it was made with an awareness of the right being abandoned and the consequences of abandoning the right). The state courts' rejection of Petitioner's *Miranda* claims was thus neither contrary to nor an unreasonable application of either federal law or the facts in the record. Petitioner's two *Miranda* claims thus serve as no basis for habeas relief.

Petitioner next contends that the state PCR courts erred in rejecting his claim that counsel proved ineffective in advising him to plead guilty by allegedly telling Petitioner that she could secure for him a 30-year sentence on all charges. Petitioner also argues that this misadvice rendered his plea unknowing and involuntary. The Appellate Division rejected these claims and affirmed the denial of his PCR petition without a hearing. According to the Appellate Division, the record of Petitioner's plea hearing clearly indicated that Petitioner had been fully informed of his sentencing exposure, Petitioner stated that he understood he faced a recommended life sentence with a substantial parole disqualifier, and any erroneous sentencing prediction by counsel therefore did not amount to ineffective assistance of counsel.

The standard applicable to claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . .

9

> whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In the guilty plea context, counsel is required to provide a criminal defendant with sufficient information to "make a reasonably informed decision whether to accept a plea offer," which will generally require a discussion of a defendant's "potential sentencing exposure." *See*

10

*United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015). "[A]n erroneous sentencing prediction by counsel[, however,] is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted" and a petitioner was informed of the necessary information – including his sentencing exposure – as part of that hearing. *Id.* (quoting *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).

The state PCR courts' rejection of Petitioner's claims without a hearing was neither contrary to nor an unreasonable application of federal law. The record is abundantly clear that, during Petitioner's plea hearing, he was specifically informed of his sentencing exposure – that he faced a recommended life sentence with an over sixty-year parole disqualifier under his plea agreement as opposed to the life without parole provided for in his indictment should he proceed to trial – and confirmed that he understood the sentence he was facing. While he was also informed that counsel reserved the right to request a lesser sentence, Petitioner cannot plausibly argue that he was unaware that a life sentence was a likely outcome of his guilty plea. That information was repeatedly confirmed to Petitioner during his plea hearing. Any misadvice or erroneous sentencing prediction made by counsel – such as the alleged assurance of a thirty-year sentence – was thus clearly dispelled by the plea court's explicit discussion of Petitioner's sentencing exposure during his plea colloquy. Petitioner, therefore, cannot make out an ineffective assistance claim on that basis. *Bui*, 795 F.3d at 367.

The state courts were likewise not unreasonable in finding that the alleged erroneous prediction did not render Petitioner's plea involuntary or unknowingly made in light of the abundantly clear and repeated discussion of Petitioner's actual likely sentence of life throughout his plea colloquy. As the state courts' consideration of these claims was neither contrary to nor an unreasonable application of federal law and the available facts, Petitioner's plea-related claims provide no basis for habeas relief.

11

In his final claim, Petitioner argues that the state PCR courts improperly rejected his second and third PCR petitions as untimely filed. Petitioner asserts that he should be permitted to proceed on his claims that trial counsel proved ineffective in failing to: (1) challenge the translating officer's qualifications; (2) challenge the officer's "dual role" of police officer and translator; (3) challenge the translating officer's training; and (4) obtain an expert regarding proper translations of the *Miranda* warnings into Mandarin Chinese. The Appellate Division rejected Petitioner's second PCR petition as untimely filed and thus procedurally barred, and the state PCR court likewise rejected Petitioner's third PCR petition as untimely filed.

"Where a state court refuses to consider a petitioner's claims because of a violation of state procedural rules, a federal habeas court is barred by the procedural default doctrine from considering the claims . . . unless the habeas petitioner can show cause for the default and prejudice attributable thereto," *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004), or the petitioner shows he was actually innocent of the crimes of which he was convicted.[2] *See Hubbard v. Pinchak*, 378 F.3d 333, 338-39 (3d Cir. 2004). New Jersey's time limitations on PCR petitions are an adequate and independent state law ground sufficient to support a finding of procedural default. *Johnson*, 392 F.3d at 559-63. Here, Petitioner has not shown any cause or prejudice for his failure to raise these claims previously, nor has he even attempted to show that he was innocent of the charged crimes – a showing which would be a near impossibility in a case involving Petitioner's clear

---

[2] The Supreme Court has also permitted petitioners to evade procedural default by showing ineffective assistance of first PCR counsel for failure to raise claims of ineffective assistance of trial counsel. *See, e.g.*, *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). This would also require the petitioner to show that he had a substantial claim of ineffective assistance of trial counsel, i.e., one which is of "some merit." *Id.* Petitioner does not attempt to assert such a gateway claim in this matter, nor has he provided sufficient factual allegations as to his defaulted claims to show that they are substantial. Instead, the defaulted claims appear to be weak attempts to reiterate his *Miranda* claims, which are not married with any showing that any of the alleged failings Petitioner raises could have led to a better result at his *Miranda* suppression hearing.

confession to the crime at hand. As Petitioner has not shown cause and prejudice or that he is innocent, and the state courts applied an adequate and independent state law ground – the PCR time bar rules – to bar Petitioner's claims, those claims are procedurally defaulted and cannot serve as a basis for habeas relief in this matter.

Even if the Court were to consider the claims presented, Petitioner cannot show that he was prejudiced by any failure of counsel to raise his new ineffective assistance claims. Petitioner asserts that counsel should have challenged the translating officer's qualifications, his dual role as officer and translator, and the officer's training, and should have secured an expert to testify as to the importance of accurate translations. Petitioner, however, has failed to show that the officer's ability to accurately translate the conversation into Mandarin was in any way faulty, nor has Petitioner shown that there was any impropriety in a police officer serving as a translator. Likewise, Petitioner has not shown that there was an actual expert who could have testified at his *Miranda* hearing or whose testimony would have had a positive effect on the outcome of that hearing, all of which are fatal to Petitioner's ability to show that he was prejudiced by counsel's alleged failings. Because Petitioner has not shown that he was prejudiced by the alleged failings, his claims are without merit even if he had been able to show an adequate basis for overcoming the procedural bar. Petitioner's claims in ground four are thus both meritless and barred. Because all of Petitioner's claims are meritless, his amended habeas petition must be denied.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are all without merit or procedurally barred for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

## V.     CONCLUSION

In conclusion, Petitioner's amended habeas petition (ECF No. 16) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: November 5, 2025